Robert E. Dunn (SBN 275600)
**EIMER STAHL LLP**
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
rdunn@eimerstahl.com

Mauro G. Tucci Jr. (*pro hac vice* forthcoming)
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 325-1500
mtucci@csglaw.com

*Attorneys for Plaintiffs Shift4 Payments, LLC and Jared Isaacman*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHIFT4 PAYMENTS, LLC and JARED ISAACMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>JAREDISAACMANCOURTCASE.COM; CLOUDFLARE, INC., a Delaware Corporation; JOHN DOES 1–10, fictious individuals responsible for registering and creating JaredIsaacmanCourtCase.com, AIGeneratedBooks.org and TheLuckyTrigger.com; and ABC CORPORATIONS 1–10, fictious entities responsible for registering and creating JaredIsaacmanCourtCase.com, AIGeneratedBooks.org and TheLuckyTrigger.com,<br><br>Defendants. | Civil Action No. 3:25-cv-06724<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Shift4 Payments, LLC ("Shift4") and Jared Isaacman ("Mr. Isaacman") (collectively "Plaintiffs"), by and through their attorneys, Eimer Stahl LLP and Chiesa Shahinian & Giantomasi PC, for their claims for relief and causes of action against Defendants JaredIsaacmanCourtCase.com;

Cloudflare, Inc.; John Does 1–10; and ABC Corporations 1–10 (collectively, "Defendants"), complains, alleges, and asserts as follows:

## NATURE OF THE ACTION

1. This is an *in rem* action brought pursuant to the federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), against defendant domain name JaredIsaacmanCourtCase.com (the "Isaacman Domain") and registrar Cloudflare, Inc. ("Cloudflare") seeking injunctive relief, plus an *in personam* action for defamation, false light, and business disparagement / trade libel against the fictitious entities John Does 1–10 and ABC Corporations 1–10 (collectively, the "Unidentified Persons").

2. In May 2025, the Unidentified Persons anonymously registered the domain AIGeneratedBooks.org (the "Books Domain") through Cloudflare and TheLuckyTrigger.com (the "Lucky Domain") through registrar Hostinger US, Inc. to create websites (respectively, the "Books Website" and the "Lucky Website") presenting a false narrative about an entirely fictious – but seemingly real – federal litigation involving Plaintiffs designed to malign their reputations and harm their business interests as one of the leading international payment processing companies. The Books Domain purportedly had, through the use of artificial intelligence technology, uncovered the existence of a secret litigation captioned *Card Connect, LLC v. Shift4 Payments, LLC*, Case No. 2:23-cv-00267-JDW, brought in the United States District Court for the Eastern District of Pennsylvania (the "Fictitious Litigation") together with a multitude of supposed "exhibits," even though PACER confirms no such litigation was ever filed. The Books Website and the Lucky Website both market a fiction book about Mr. Isaacman titled *The Lucky Trigger* (the "Book") that claims to be a "pulse pounding thriller" written by an artificial intelligence program called "Rogue AI."

3. In June 2025, the Unidentified Persons anonymously registered the Isaacman Domain and used it to create a website (the "Isaacman Website") presenting the Fictitious Litigation as if it were real. Specifically, the Isaacman Website falsely attributes 61 statements to Mr. Isaacman, the Executive Chairman of Shift4, that are quotes from the fabricated exhibits of the Fictitious Litigation. Moreover, the Isaacman Website links to 2,430 such "exhibits" that all appear to have been generated

by artificial intelligence. The false quotes and fabricated "exhibits" present Plaintiffs, and particularly Mr. Isaacman, as incompetent and someone who engages in unethical and criminal activity. This was the apparent aim of the Isaacman Website, which the Unidentified Persons apparently used as a pretext to alter the Wikipedia page for Shift4 to include a description of the Fictitious Litigation linking to the Isaacman Domain for a period of time in June and July 2025.

4. Through their conduct, Defendants have damaged Plaintiffs' invaluable rights – Mr. Isaacman in his personal name due to his status as a public figure and Shift4 in its well-known trademark and service mark – and the intervention of this Court is required to grant the equitable and legal relief necessary to repair the damage inflicted on Plaintiffs.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the *in rem* action against the Isaacman Domain under 28 U.S.C. § 1331 because this case arises under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). This Court has supplemental jurisdiction over the state-law tort claims under 28 U.S.C. § 1367(a) because they are so related to the *in rem* action that they form part of the same case or controversy.

6. Venue is proper in this judicial district pursuant to 15 U.S.C. § 1125(d)(2)(A) because the principal place of business of the Isaacman Domain's registrar, Cloudflare, Inc. ("Cloudflare"), is San Francisco, California.

**DIVISIONAL ASSIGNMENT**

7. Assignment to the San Francisco Division under Civil Local Rules 3-2(c) and 3-2(d) is proper because Cloudflare's principal place of business is in San Francisco County.

**PARTIES**

8. Shift4 is a Delaware corporation and a payment processing company specializing in mobile payment software and hardware. Shift4 has its principal place of business in Center Valley, Pennsylvania.

9. Mr. Isaacman is the founder and Executive Chairman of Shift4 and resides in Easton, Pennsylvania.

10. The Isaacman Domain is a domain name anonymously registered by the Unidentified Persons through Cloudflare bearing the first and last name of Mr. Isaacman.

11. Cloudflare is an Internet domain registrar and web hosting company incorporated in Delaware and with its principal place of business in San Francisco, California. Cloudflare anonymously registered the Isaacman Domain and the Books Domain for the Unidentified Persons.

12. John Does 1–10 and ABC Corporations 1–10 (the "Unidentified Persons") are as-yet unidentified individuals and entities that have initiated a coordinated attack on Plaintiffs by registering the Domain Names anonymously through the Registrars and then creating the Books Website, the Lucky Website and the Isaacman Website (collectively, the "Websites") to promote entirely false narratives about Defendants with the obvious intent to cause harm to Defendants' reputations. Once these unknown individuals and entities are identified, Plaintiffs expect to seek leave to amend this Complaint to name specific individuals or entities.

## GENERAL ALLEGATIONS

13. Shift4 provides its customers with integrated payment processing services, which include mobile and point-of-sale solutions, business intelligence gathering, unified commerce solutions, and online payment services and products which include flexible checkout solutions, fraud prevention, revenue optimization, payment integration, among many other innovative payment processing solutions.

14. Shift4 annually processes upward of 5 billion transactions valued at more than $260 billion for more than 200,000 merchants across industries including restaurants, airlines, lodging and hospitality, sports and entertainment, retail, among many others.

15. Mr. Isaacman is a leader in the payments industry in his role as the founder of Shift4, its former CEO, and currently its Executive Chairman.

16. Mr. Isaacman is the founder of Shift4 and, in the payments industry, he is synonymous with Shift4 such that the two are practically inseparable in the minds of payments professionals.

17. Mr. Isaacman is also a public figure who is internationally known as an astronaut and as the commander of both Inspiration4, the first all-civilian spaceflight, and Polaris Dawn, where he became the first private citizen to perform a spacewalk.

18. In early 2025, Mr. Isaacman was considered by the United States Senate to serve as Administrator of the National Aeronautics and Space Administration.

**The Books Domain & Website**

19. On or about May 8, 2025, the Unidentified Persons anonymously registered the Books Domain using Cloudflare as the registrar. Attached hereto as Exhibit A is the "Who Is" Lookup data for the Books Domain reflecting available registration information.

20. The Unidentified Persons used the Books Domain to create the Books Website that markets the Book and promotes the Rogue AI author, but also presents the Fictitious Litigation as a "real-world Shift4 case." Attached hereto as Exhibit B is the main page of the Books Website, www.AIGeneratedBooks.org.

21. In reality, the Fictitious Litigation was never filed, does not exist, and is a complete fabrication by the Unidentified Persons.

22. The Books Website inconsistently identifies the Fictitious Litigation's case number and venue.

23. The most common case number and court provided for the Fictitious Litigation are Case No. 2:23-cv-00267 in the United States District Court for the Eastern District of Pennsylvania.

24. On the United States District Courts' PACER website, the Case No. 2:23-cv-00267 links to *Habtu v. Economy Preferred Insurance Company*, which has nothing to do with Plaintiffs. Attached hereto as Exhibit C is a true and accurate copy of the PACER Docket report for *Habtu v. Economy Preferred Insurance Company*, Case No. 2:23-cv-00267-AB.

25. The Books Website offers a sample of the Book for download, which provides a 15,420 page PDF document of fabricated "exhibits" from the Fictitious Litigation, and limited translations are available in German, French, and Chinese.

26. The "exhibits" contain innumerable factually inaccurate statements, never made by Mr. Isaacman or by others associated with Shift4, that are injurious to the reputation of Plaintiffs.

**"Exhibits" from the Fictitious Litigation**

27. The Unidentified Persons used artificial intelligence to create 2,430 documents presented as "exhibits" from the Fictious Litigation.

28. The numbered "exhibits" are largely comprised of narrative explanations of how the exhibits were "found" or "extracted" from various litigations captioned *Card Connect, LLC v. Shift4 Payments, LLC*, though the case number varied significantly and, instead of the United States District Court for the Eastern District of Pennsylvania, the litigation is occasionally described as proceeding in the Delaware Court of Chancery.

29. Interspersed in the narrative explanations of the "exhibits" are various text and graphics sections presented as if they are copied from e-mails, text messages, deposition transcripts, and other so-called "exhibits" that were supposedly marked and used in connection with the Fictitious Litigation. For example:

   a. "Exhibit" 639 falsely claimed that in an email dated August 14, 2016, Mr. Isaacman stated "Gonna go try some blow off a strippers ass and then fly my jet really fast."

   b. "Exhibit" 640 falsely claimed that Mr. Isaacman believed a Shift4 employee had been distributing illegal drugs in Shift4's offices and that Mr. Isaacman had sent an e-mail dated July 13, 2015 about taking "the extraordinary step to ge[t] the employees help so no one acts irresponsible on compan[y] time, gets hurt or arrested, but it is unbelievable that would allow any of this to occur to begin with."

   c. "Exhibit" 1343 falsely claimed that in December 2015 text messages Mr. Isaacman stated (i) that he "[w]as passed out early in bed with kids a little after 8pm after 20 min of hot tub debauchery," (ii) "I think about you killing yourself literally all day long" in urging a colleague to commit suicide and (iii) to the same colleague, that he "need[ed] to talk about all the random prostitutes."

d. "Exhibit" 1345 falsely claimed that Mr. Isaacman wrote in a message to a colleague that "I promise to not bring prostitutes to next meeting. … At least local ones. … The Canadian ones are worth the premium" and that he wrote a text message to a colleague stating "Spending the weekend with prostitutes and strippers will be just fine:)"

e. "Exhibit" 1347 falsely claimed that Mr. Isaacman e-mailed colleagues on August 15, 2014 asking if they were interested in joining him for "Strippers and blow" (i.e., cocaine), and in a separate e-mail dated January 29, 2015 suggesting that "[w]e should have 50 pole dancers and 50 kilos of blow[.]"

f. "Exhibit" 63 falsely claimed that, when a Shift4 representative received a May 8, 2017 e-mail about a contract negotiation, he supposedly responded that it was "[t]ime for a cocaine and hookers party" and that Shift4 should send the other side "some good ganja," resulting in the "ganja" actually being sent to the other company.

g. "Exhibit" 64 falsely represents that Shift4 employed prostitutes when it claimed that a Shift4 corporate officer stated in a January 7, 2018 e-mail (which was partially cut off in the exhibit) "The way I … paying for the hooker, we own the hooker and we can do wh[…] want with the hooker."

h. "Exhibit" 1703 falsely claims that, in August 2018, Shift4's auditors were "hyper critical" of Shift4's accounting practices and required a restatement of the 2015 and 2016 financial statements, none of which occurred.

i. "Exhibit" 1720 falsely claims that Shift4 had "toxic debt" that necessitated a merger with Card Connect in 2017, none of which occurred.

j. "Exhibit" 1721 falsely claims that in 2017 Mr. Isaacman was viewed as a "toxic" influence to the Shift4 organization that caused employees to be "stressed to the limit."

k. "Exhibit" 1764 falsely claims that Shift4 was "smoothing earnings" as of March 2017 and that Mr. Isaacman believed that Shif4 executives would be punished with "Jail time" if this were discovered.

7
COMPLAINT; CASE NO. 3:25-cv-06724
4925-6316-3228.v1

  l. "Exhibit" 2369 falsely claims that, with respect to a corporate transaction in July 2019, a Shif4 representative supposedly stated that "JAred will be in jail" because the "level of corruption is mind boggling" for using Israeli intelligence services to develop information.

  m. "Exhibit" 2461 falsely claims that, in July 2018, Shift4 issued a mass e-mail to clients that included a term that would be offensive to Japanese people and that Mr. Isaacman dismissively responded, "The Japanese make great sushi" and "I love sushi".

  n. "Exhibit" 2461 also falsely claims that on another occasion, a Shift4 corporate officer sent a string of text messages that included 15 racial slurs, all of which were redacted as "[REDACTED-RACIST WORD]" in the exhibit but were obviously intended to demonstrate that senior Shift4 representatives allow a culture of racial discrimination.

30. While the foregoing are a representative sampling of the false statements contained in the "exhibits," a comprehensive list identifying every false statement is entirely impracticable given the 15,420 pages of material the Unidentified Persons have caused to be generated by artificial intelligence, all of which are false statements.

**The Lucky Domain & Website**

31. On or about May 23, 2025, the Unidentified Persons anonymously registered the Lucky Domain using Hostinger as the registrar. Attached hereto as Exhibit D is the "Who Is" Lookup data for the Lucky Domain reflecting available registration information.

32. The Unidentified Persons used the Lucky Domain to create the Lucky Website that markets the Book and a presents a related blog. Attached hereto as Exhibit E is the main page of the Lucky Website, www.TheLuckyTrigger.com.

33. The Lucky Website describes the Book as "a pulse-pounding thriller that throws you into a world of secrets, spies, and unexpected consequences. When an eternally lucky playboy billionaire stumbles into a global intelligence crisis, his charm and fortune may not be enough to save him."

34. The Book is not a novel as the Lucky Website suggests but rather consists only of the 15,420-page unstructured collection of false "exhibits" from the Fictitious Litigation, with chapters that are merely excerpts from that document.

35. The Lucky Website lists a "cast of characters" with some real people and other imagined personas together with a "timeline," all of which is drawn from the Book's "exhibits" from the Fictitious Litigation.

36. The Lucky Website and the Books Website include multiple links between the two websites.

37. In reality, the Books Website and the Lucky Website were created for the purpose of publishing false information about Plaintiffs under the guise of the Fictitious Litigation so that the Unidentified Persons could present that information as true and then weaponize it to harm Plaintiffs' business reputations.

38. At the same time, the Unidentified Persons are using the Books Website and Lucky Website to profit both from the Book and from promoting the future use of its Rogue AI author tool that drafted the Book and could create future works.

**The Isaacman Domain & Website**

39. On or about June 14, 2025, the Unidentified Persons anonymously registered the Isaacman Domain using Cloudflare as the registrar. Attached hereto as Exhibit F is the "Who Is" Lookup data for the Isaacman Domain reflecting available registration information.

40. The Unidentified Persons promptly used the Isaacman Domain to create the Isaacman Website, which contains numerous false and defamatory statements about Plaintiffs.

41. In particular, the Isaacman Website's main page contains 61 statements that are attributed to Mr. Isaacman in the form of quotations that are purportedly from materials filed in the Fictitious Litigation. Attached hereto as Exhibit G is the main page of the Isaacman Website, www.JaredIsaacmanCourtCase.com.

42. <u>None</u> of the 61 statements attributed to Mr. Isaacman were ever made by Mr. Isaacman.

43. Examples of the falsely attributed and fabricated quotes on the main page of Isaacman Website include the following:

   a. "I always planned to kill them…I just needed the vehicle built to do it"
   b. "Perfect time to put a bullet in [REDACTED]?"
   c. "Ok and for the record I have a concrete overcoat in my size ready to go for him Concrete boots too"
   d. "I have friends that have been to prison for attempted murder. I have friends that have been to prison for beating people up for the mafia. Ihave friends that would not think twice about harming someone for me if I asked them to."
   e. "We should prob just forge signatures at this point...jk...kind of."

44. Each of the 61 quotes on the main page of the Isaacman Website are linked to a corresponding "exhibit" from the Fictitious Litigation that is supposedly the source of the quote, thereby providing a veneer of credibility to the quotes. Attached hereto as Exhibit H is the "exhibits" page of the Isaacman Website, www.JaredIsaacmanCourtCase.com displaying links to 2,430 fabricated exhibits.

45. Because Shift4 is so closely linked to Mr. Isaacman, any injury to Mr. Isaacman's reputation by extension injures the reputation of Shift4 as a company.

46. The Isaacman Website, comprising the defamatory, false, and malicious statements described above, was intended by the Unidentified Persons to harm Plaintiffs, Plaintiffs' business interests, and Plaintiffs' goodwill and reputation with customers and the payments industry.

Complaints to Cloudflare

47. Upon discovering the Isaacman Website, Plaintiffs promptly reported the defamatory content of the Isaacman Website to Cloudflare on July 17, 2025, and requested that the Isaacman Website be taken down immediately.

48. Later that same day, Cloudflare Trust & Safety responded to Plaintiffs' report of abuse by refusing to remove the Isaacman Website, noting in part that "we cannot remove material from the Internet that is hosted by others." Cloudflare's response also stated, "We are unable to process your report for the following reason(s): - We could not detect any violations for the reported URL at this time."

49. By letter dated July 23, 2025, Plaintiffs, through their counsel, demanded that Cloudflare, as the registrar of the Isaacman Domain, provide information regarding the identity of the registrant, owner, host, and/or any person or entity associated with the Isaacman Domain. Attached hereto as Exhibit I is a copy of the July 23, 2025 letter to Cloudflare.

50. By letter dated July 29, 2025, Plaintiffs, through their counsel, provided documentation to Cloudflare demonstrating that the Fictitious Litigation, which is the entire focus of the Isaacman Website, is a fraud by providing a copy of the PACER Docket report for *Habtu v. Economy Preferred Insurance Company*, Case No. 2:23-cv-00267-AB. Attached hereto as Exhibit J.

51. Cloudflare refused and continues to refuse to provide Plaintiffs with the identity of the registrant, owner, host, and/or any person or entity associated with the domain name of the Isaacman Website.

52. As a direct and proximate result of Cloudflare's willful refusal to provide Plaintiffs with the requested information regarding the identity of the registrant, owner, host, and/or any person or entity associated with the domain name of the Isaacman Website, Plaintiffs have suffered and continue to suffer immediate and irreparable injury including loss of business, loss of business reputation, and loss of goodwill.

53. Further, as a direct and proximate result of the Unidentified Person's authorship and maintenance of the Isaacman Website and its false, defamatory, and malicious content, Plaintiffs have suffered and continue to suffer injury including loss of business, loss of business reputation, and loss of goodwill and significant monetary damages.

# COUNT I

## VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

*In rem* proceeding against the Isaacman Domain and Cloudflare

54. The foregoing allegations set forth herein are incorporated by reference.

55. Prior to registration of the Isaacman Domain, Mr. Isaacman was a well-known public figure for his leadership in finance technology, space exploration, and philanthropy. Mr. Isaacman's name is a protected mark under federal law. *See* 15 U.S.C. § 1125(d)(1)(A).

56. The actions of the Unidentified Persons in anonymously registering the Isaacman Domain through Cloudflare constitutes registration, maintenance, trafficking in, or use of a domain name that is confusingly similar to the personal name of Mr. Isaacman with a bad faith intent to profit therefrom, as evidenced by the 61 false quotes attributed to Mr. Isaacman and the 2,430 fabricated exhibits on the Isaacman Website. *See* 15 U.S.C. § 1125(d)(1)(A)(i)-(ii).

57. The false quotes and exhibits on the Isaacman Website, which utilizes the Isaacman Domain, drives traffic to the Books Website and the Lucky Website that promote the Book as a "pulse pounding thriller" written by Rogue AI.

58. The Unidentified Persons are marketing the Book through use of the Isaacman Domain in an attempt to profit both from the Book and by monetizing future use of the Rogue AI author tool.

59. The Isaacman Domain also refers to the Fictitious Litigation (i.e., the "Court Case") that the Isaacman Website identifies as involving both Shift4 and Mr. Isaacman in unethical, violent, and potentially criminal activity.

60. In light of the anonymous registration of the Isaacman Domain that conceals the identity of the Unidentified Persons as the true owners of the Isaacman Domain, Plaintiffs are unable to obtain *in personam* jurisdiction over the Unidentified Persons who registered and own the Isaacman Domain or any other person who would have been named as a defendant in a civil action under 15 U.S.C. § 1125(d)(1). *See id.* § 1125(d)(2)(A)(ii)(I).

61. Alternatively, Plaintiffs, despite due diligence have been unable to find a person who would have been named as a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A). *See id.* § 1125(d)(2)(A)(ii)(II).

62. Plaintiffs therefore seek an order directing Cloudflare, as registrar of the Isaacman Domain, to transfer the registration of the Isaacman Domain to Plaintiffs pursuant to 15 U.S.C. § 1125(d)(1)(C).

63. Further, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i)(II), upon service of a filed stamped copy of the Complaint, Cloudflare shall "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court."

## COUNT II

## DEFAMATION

**Against John Does 1–10 and ABC Corporations 1–10**

64. The foregoing allegations set forth herein are incorporated by reference.

65. The Unidentified Persons made false and defamatory statements concerning Plaintiffs in the "exhibits" published on the Books Website, the Lucky Website, and the Isaacman Website.

66. On the Isaacman Website, the Unidentified Persons falsely attributed harmful statements to Mr. Isaacman that he did not make.

67. The Unidentified Persons made false and defamatory statements concerning Plaintiffs in the Book that was published online via the Books Website, the Lucky Website, and the Isaacman Website.

68. The Unidentified Persons not only published the false and defamatory statements in English, but have begun to publish the book in German, French, and Chinese translations to maximize the audience of the statements.

69. The Unidentified Persons altered the "Shift4" Wikipedia page to create a factually baseless entry about the Fictitious Litigation using the false information of the Isaacman Website as its source and linking to the Isaacman Domain.

70. None of the false statements made by the Unidentified Persons are protected by a privilege that shields that statement from a claim for defamation.

71. The Unidentified Persons acted with actual malice in publishing the defamatory statements concerning Plaintiffs.

72. These false and defamatory statements were communicated to third parties through the Isaacman Website and through third party websites such as Wikipedia, reaching a vast audience.

73. The Unidentified Persons' statements concerning Plaintiffs are defamatory per se because they allege business incompetence, criminal activity, and acts of moral turpitude.

74. As a proximate result of the Unidentified Persons' false and defamatory statements, Plaintiffs suffered and will continue to suffer damages, including economic damages, emotional distress, damages to reputation, and/or damage to Plaintiffs' current and prospective business prospects and relationships.

## COUNT III

## FALSE LIGHT

### Against John Does 1–10 and ABC Corporations 1–10

75. The foregoing allegations set forth herein are incorporated by reference.

76. The Unidentified Persons publicized statements concerning Plaintiffs in the "exhibits" available on the Books Website, the Lucky Website, and the Isaacman Website, as well as in the Book.

77. The information communicated by the Unidentified Persons in the "exhibits" negatively portrayed Plaintiffs in a false light that would be and is offensive to any reasonable person.

78. The Unidentified Persons actually knew that the information about Plaintiffs contained in the "exhibits" was false, or alternatively published the information with reckless disregard as to whether the information was false.

79. Plaintiffs' personal and/or business reputations have been damaged as a result of the Unidentified Person's publication of the "exhibits" on the websites and in the Book.

80. As a proximate result of the Unidentified Persons' publication of false information, Plaintiffs suffered and will continue to suffer damages, including economic damages, emotional distress, damages to reputation, and/or damage to Plaintiffs' current and prospective business prospects and relationships.

## COUNT IV

## BUSINESS DISPARAGEMENT / TRADE LIBEL

### Against John Does 1–10 and ABC Corporations 1–10

81. The foregoing allegations set forth herein are incorporated by reference.

82. The Unidentified Persons publicized false statements concerning Plaintiffs in the "exhibits" available on the Books Website, the Lucky Website, and the Isaacman Website, as well as in the Book.

83. The statements specifically disparaged Mr. Isaacman's competence and trustworthiness as a businessman and as an executive of Shift4.

84. The statements specifically disparaged the business practices, leadership, and culture of Shift4 as a corporate enterprise.

85. The Unidentified Persons actually knew that the statements about Plaintiffs contained in the "exhibits" were false, or alternatively published the statements with reckless disregard as to whether they were false.

86. As a proximate result of the Unidentified Persons' false statements, Plaintiffs suffered and will continue to suffer damages, including economic damages, emotional distress, damages to reputation, and/or damage to Plaintiffs' current and prospective business prospects and relationships.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in favor of Plaintiffs and against Defendants as follows:

A. Entry of an Order that those acting in concert or participation with the Unidentified Persons who have notice of this action cease hosting, facilitating access to, or providing any supporting service for the Isaacman Domain;

B. Entry of an Order pursuant to 15 U.S.C. § 1125(d)(2)(D) for Cloudflare to transfer the registration of the Isaacman Domain to Plaintiffs;

C. Award compensatory and punitive damages in favor of Plaintiffs;

D. Awarding reimbursement of attorneys' fees and costs to Plaintiffs; and

E. For such other and further relief in favor of Plaintiffs and against Defendants as may be appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable under Counts I–IV in this action.

Dated: August 8, 2025

**EIMER STAHL LLP**

By: */s/ Robert E. Dunn*
Robert E. Dunn (SBN 275600)
EIMER STAHL LLP
1999 S. Bascom Avenue, Suite 1025
Campbell, CA 95008
(408) 889-1690
rdunn@eimerstahl.com

**CHIESA SHAHINIAN & GIANTOMASI PC**

Mauro G. Tucci Jr. (*pro hac vice* forthcoming)
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
mtucci@csglaw.com

*Attorneys for Plaintiffs Shift4 Payments LLC and Jared Isaacman*