UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIFT4 PAYMENTS, LLC and JARED ISAACMAN<br><br>Plaintiffs,<br><br>vs.<br><br>JAREDISAACMANCOURTCASE.COM; CLOUDFLARE, INC., a Delaware Corporation; JOHN DOES 1-10, fictious individuals responsible for registering and creating JaredIsaacmanCourtCase.com, AIGeneratedBooks.org and TheLuckyTrigger.com; and ABC CORPORATIONS 1-10, fictious entities responsible for registering and creating JaredIsaacmanCourtCase.com, AIGeneratedBooks.org and TheLuckyTrigger.com,<br><br>Defendants. | Case No. 4:25-cv-06724-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 16 |

Plaintiffs Shift4 Payments, LLC and Jared Isaacman bring this suit against internet domain name registrar Cloudflare, Inc., the website JaredIsaacmanCourtCase.com, and Doe defendants who own and operate three websites—JaredIsaacmanCourtCase.Com, AIGeneratedBooks.org and TheLuckyTrigger.com. ECF No. 1. The complaint alleges claims for cybersquatting, defamation, false light and business disparagement. *Id.*

Plaintiffs now move for a preliminary injunction under the Anticybersquatting and Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). ECF No. 16. For the reasons that follow, the court will deny the motion.

**I.     BACKGROUND**

   **A.     Factual Background**

   Plaintiff Shift4 is a publicly traded payment processing company. ECF No. 16-1 ¶1.

1  Plaintiff Jared Isaacman is the founder, chairman and former CEO of Shift4.  ECF No. 16-1 ¶4.
2  Isaacman is a public figure known for his activities as an astronaut, pilot, and for being considered
3  by the United States Senate to serve as the administrator of National Aeronautics and Space
4  Administration.  ECF No. 16-1

5  In recent months, Plaintiffs have identified three websites containing information about
6  litigation in which Shift4 is purportedly, but not actually, involved:
7  JaredIsaacmanCourtCase.com, AIGeneratedBooks.com, and TheLuckyTrigger.com.  ECF No. 16-
8  2 ¶12.  Defendant Cloudflare. Inc. is the registrar for JaredIsaacmanCourtCase.com and
9  AIGeneratedBooks.com, ECF No. 16-2 ¶16, ¶18, and Hostinger is the registrar for
10  TheLuckyTrigger.com, ECF No. 16-2 ¶15.  All three websites contain information about a
11  fictitious federal case, *Card Connect, LLC v. Shift4 Payments, LLC*, Case No. 2:23-cv-00267-
12  JDW [*Card Connect* case], allegedly filed in the Eastern District of Pennsylvania.  ECF No. 16-2
13  ¶9, ¶12.  The cited case number actually pertains to an existing but wholly different litigation
14  involving different parties and facts.  ECF No. 16-2 ¶12.

15  The domain for the first website, JaredIsaacmanCourtCase.com ("Isaacman Website"), was
16  anonymously registered on or about June 14, 2025 utilizing Defendant Cloudflare, Inc. as the
17  registrar.  ECF No. 16-2 ¶12, ¶18.  "The Isaacman Website links to 2,430 fabricated 'exhibits' that
18  all appear to have been generated by artificial intelligence."  ECF No. 16-2 ¶13.  The Isaacman
19  Website also lists 61 fabricated quotes it attributes to Mr. Isaacman, allegedly derived from the
20  thousands of fake exhibits in the *Card Connect* case.  ECF No. 16-3 at 25-30; ECF No. 16-2 ¶13.
21  The fabricated quotes attributed to Mr. Isaacman including admissions of illicit drug usage,
22  solicitation, criminal conduct, harassment of employees of Shift4, racial discrimination, financial
23  issues at Shift4.  ECF No. 16-2 ¶15.

24  The domain for the second website, The AIGeneratedBooks.com [Books Website], was
25  anonymously registered on or about May 8, 2025 using Cloudflare as its registrar.  ECF No. 16-2
26  ¶16.  The website purports to have discovered the existence of the *Card Connect* case through the
27  use of an Artificial Intelligence program.  *Id.*  The website markets a fictional book titled *The*
28  *Lucky Trigger* that was apparently written by an AI called "Rogue AI" based on the "real-world

2

1  Shift4 case" and offers a sample for download. *Id*. The sample is a 15,420-page PDF containing
2  the fabricated exhibits from the Card Connect case. *Id.* The exhibits similarly contain false and
3  inaccurate statements attributed to Mr. Isaacman and other employees of Shift4. *Id.*

4      The domain for the third website, TheLuckyTrigger.com [Lucky Website], was
5  anonymously registered on or about May 23, 2025 using Hostinger as its registrar. ECF No. 16-2
6  ¶17. The website hosted on the domain markets *The Lucky Trigger*, describing the book as a
7  "pulse-pounding thriller." *Id.* The website lists a cast of characters featured in the book, of which
8  Mr. Isaacman is one. *Id.* A link to download the book leads to a link to a 15,420-page PDF
9  containing fabricated exhibits and descriptions of the *Card Connect* Case. *Id*.

10     Upon discovery of the Isaacman Website and discovering that Defendant Cloudflare
11 served as the registrar for the website, Plaintiffs reported the false and defamatory content to
12 Cloudflare on July 17, 2025 and demanded that the website be taken down. ECF No. 16-2 ¶19.
13 Cloudflare rejected Plaintiffs' request, stating that they were unable to "remove materials from the
14 Internet hosted by others," and also because they "did not detect any violations for the reported
15 URL." *Id.* When Plaintiffs requested on July 23, 2025 that Cloudflare provide information
16 regarding the identity of the registrant or owner of the website and provided evidence that the
17 *Card Connect* case the Isaacman Website talked about was false, Cloudflare rejected their
18 requests. ECF No. 16-2 ¶20-22.

19     In the meantime, the information from the fictitious litigation websites continues to be
20 circulate on the internet, being republished on websites such as "Dailymotion," "Scribd,"
21 "TheLayoff.com," and "financial-news.co.uk," sharing information about the *Card Connect* case
22 and the exhibits as though they were from a real case. ECF No. 16-2 ¶25-26.

23     **B.    Procedural Background**

24     On August 8, 2025, Plaintiffs filed a Complaint against the anonymous persons or
25 corporations responsible for the registration and creation of the three websites and Cloudflare Inc.,
26 alleging violations of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The
27 complaint also includes claims for defamation, false light, and business disparagement/trade libel.
28 ECF No. 1. On August 22, 2025, Plaintiffs moved for a temporary restraining order and order for

1  expedited discovery against defendant Cloudflare and third-party Hostinger. ECF No. 10. On
2  August 27, 2025, the Court granted Plaintiffs' Motion for a Temporary Restraining Order relating
3  to the Isaacman Website domain name. ECF No. 15. The order also required Defendants to show
4  cause as to why a preliminary injunction should not be issued and permitted limited discovery
5  from Defendant Cloudflare and third-party Hostinger to identify the owner(s) of the websites. *Id*.

6  Plaintiffs moved for a preliminary injunction on September 1, 2025 to enjoin Defendants
7  from operating, using or transferring to a different registrar all three of the websites. ECF. No. 15.
8  Plaintiffs also seek to have Defendants Cloudflare and third party Hostinger disable the domain
9  names, and cease to provide services to the Defendants. *Id.* The motion is unopposed.

10  On September 8, 2025, counsel for Plaintiffs filed a status report indicating that "Plaintiffs
11  met and conferred with defendant Cloudflare, Inc. ("Cloudflare") on September 3, 2025" and that
12  "Cloudflare informed us that it takes no position on the Preliminary Injunction Motion and does
13  not intend to oppose that motion or appear at the September 9, 2025 hearing, absent further
14  direction from the Court." ECF No. 21 at 1.

**II.     JURISDICTION**

This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 because this matter arises under the federal laws of the United States, the Anticybersquatting and Consumer Protection Act, 15 U.S.C. § 1125(d). The Court has jurisdiction over the *in rem* action involving Defendant Isaacman Website under 15 U.S.C. § 1125(d)(2) because the registrar of the website, Cloudflare Inc., is located within this judicial district.

**III.    LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

4

1    To grant preliminary injunctive relief, a court must find that "a certain threshold showing
2    [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per
3    curiam). As to the first factor, a plaintiff is "not required to prove their claim, but only must show
4    that they [are] likely to succeed on the merits." *Glossip v. Gross*, 135 S.Ct. 2726, 2792 (2015).

5    The Ninth Circuit employs a "sliding scale" approach to the four factors relevant to
6    preliminary injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.
7    2011). Under the sliding scale approach, "'serious questions going to the merits' and a balance of
8    hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,
9    so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the
10   injunction is in the public interest." *Id.* at 1135.

## IV.  ANALYSIS

Plaintiffs seek a preliminary injunction pursuant to the ACPA to prevent Defendants' illegal cybersquatting over the domain name JaredIsaacmanCourtCase.com. 15 U.S.C. § 1125(d). Because Mr. Isaacman's personal name is unlikely to be a mark entitled to protection under § 1125(d), the court does not find that the Plaintiffs are likely to succeed on the merits of their ACPA claim and denies the motion for a preliminary injunction.

Congress passed the ACPA in 1999, amending the Lanham Act and adding two new causes of action aimed specifically at cybersquatting. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 549 (9th Cir. 2013). "[C]ybersquatting occurs when a person other than the trademark holder registers the domain name of a well-known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir.2005) (quoting *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 672, 689 (6th Cir.2004)). To prevail on a cybersquatting claim under the ACPA, "the owner of a mark, *including a personal name which is protected as a mark under this section*, if, without regard to the goods or services of the parties" must show that the defendant:

(i) has a bad faith intent to profit from that mark, including a

5

                    personal name which is protected as a mark under this section; and
    (ii)   registers, traffics in, or uses a domain name that—
        (a) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
        (b) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
        (c) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

15 U.S.C. § 1125(d)(1)(A).

      Here, defendants have used Plaintiffs' personal name in the domain name of the website, JaredIsaacmanCourtCase.com. While the ACPA can apply to personal names, § 1125(d)(1)(A) clarifies that a cause of action is available only when the infringing domain includes "a personal name which is protected as a mark under this section [the Lanham Act]." Plaintiffs admit that as a general matter, personal names are not inherently distinctive and therefore are not entitled to trademark protection under the Lanham Act. Mot. at 15. They contend, however, that § 1125(d) applies when the alleged cybersquatting is with regard to personal name that has acquired a secondary meaning or distinctiveness. *Id.* In the alternative, Plaintiffs argue that Mr. Isaacman's name is protected because it is famous. While the Court agrees that a person's name that is not trademarked could be considered a protected mark under ACPA if it acquires secondary meaning, it finds that the plaintiffs have not established at this stage that Mr. Isaacman's name is a mark with secondary meaning.

      Under the Lanham Act, a personal name is a descriptive term. *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1222 (C.D. Cal. 2000). "A descriptive mark receives trademark protection only when it establishes 'secondary meaning' in the marketplace." *Black v. Irving Materials, Inc.*, 2019 WL 1995342, at *5 (N.D. Cal. May 6, 2019) (citing *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 13:2 (5th ed. 2025). Secondary meaning only "occurs when 'in the minds of the public, the primary significance of [the name] is to identify the source of the product rather than the product itself.'" *Polin v. Behrman*, 2010 WL 11545054 at *4 (C.D. Cal. Dec. 13, 2010), aff'd, 429 F. App'x 682 (9th Cir. 2011)

(*citing Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211(2000)).

Establishing that a personal name has acquired a secondary meaning is not easy. In a case where Plaintiffs alleged that the name "Princess Diana of Wales" had acquired the secondary meaning of identifying charitable and humanitarian services rather than the individual herself, the court wrote that secondary meaning is not established "until the goods or services submerge the primary meaning of the name as a word identifying a person." *Cairns*, 107 F. Supp. 2d at 1222 (*citing Visser v. Macres*, 214 Cal.App.2d 249, 253 (1963)). The court went on to say that "[a] finding of secondary meaning in this case would mean that the words 'Diana, Princess of Wales' would no longer primarily identify the individual, Princess Diana, but instead identify plaintiffs' charitable activities. This is an absurd contention to say the least." *Cairns* at 1222.

Making a finding that a personal name has acquired a secondary meaning therefore requires substantially more than a general allegation that the name of a proprietor is synonymous with the services offered by a company he founded. *See Polin*, 2010 WL 11545054 at *4 (finding that the name of a plaintiff who practiced family law had not gained secondary meaning as long as the name identified the plaintiff rather than services she offered). Here, other than conclusory assertions in a declaration filed in support of the Motion that "Jared Isaacman" is synonymous with Shift4, Plaintiffs provide no evidence that Mr. Isaacman's personal name has obtained secondary meaning such that his name references Shift4 and its services rather than identifying Mr. Isaacman himself. ECF No. 16-1 ¶4. Instead, as is apparent from Plaintiffs' own declaration that Mr. Isaacman is known for being an astronaut, pilot and potential NASA nominee, his personal name seems to reference only the man himself—a private citizen, albeit one of some notoriety—rather than the payment processing offerings of Shift4. *See* ECF No. 16-1 ¶5. As a result, the Court cannot conclude at this stage that Plaintiffs possess a mark that is covered under the ACPA.

Plaintiffs also contend that Mr. Isaacman's name is a mark under the ACPA because the provisions in § 1125(d)(1)(A)(ii) referencing "famous" marks offer protections against cybersquatting concerning the personal name of a famous person. Mot at 15. The statute, however, requires both that the defendant be utilizing "a mark, including a personal name

7

1 protected as a mark under this section" *and* that the statute applies to marks that are either
2 "distinctive," "famous," or otherwise statutorily protected. § 1125(d)(1)(A) (emphasis added).
3 Since Mr. Isaacman's name has not gained secondary meaning, § 1125(d) does not offer
4 protection against cybersquatting by a domain utilizing his name simply because he is a famous
5 person.

6 Even if the fame of a name was sufficient to grant it status as a protected mark, Plaintiffs
7 also have not provided evidence to support the contention that Mr. Isaacman's name is a "famous
8 mark" as designated by the Lanham Act. The Lanham Act provides that "a mark is famous if it is
9 widely recognized by the general consuming public of the United States as a designation of source
10 of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2). The Act provides that
11 courts can consider the following factors in determining whether a mark "possesses the requisite
12 degree of recognition" including "(i) The duration, extent, and geographic reach of advertising and
13 publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) The
14 amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii)
15 The extent of actual recognition of the mark; (iv) Whether the mark was registered under the Act
16 of March 3, 1881, or the Act of February 20, 1905, or on the principal register." *Id*. Plaintiffs do
17 not provide evidence that Mr. Isaacman's name has been advertised or publicized widely; that
18 goods or services have been provided for sale under Mr. Isaacman's name specifically; or any
19 evidence of the extent of the actual recognition of his name. Therefore, even if fame were
20 sufficient to establish protection for a name, Plaintiffs have not demonstrated that Mr. Isaacman's
21 name is famous for the purposes of being recognized as a mark under the Lanham Act.

22 As a result, the Court cannot conclude, at least at this stage of the proceedings, that the Mr.
23 Isaacman's personal name is a "mark" for purposes of the ACPA. While Plaintiffs' may be able to
24 establish that Defendants have a "bad faith intent to profit" utilizing Mr. Isaacman's name in
25 promoting *The Lucky Trigger* book through the Books Website and Lucky Website, this does not
26 surmount the threshold showing that the Plaintiffs' must be the owner of the protected mark that is
27 being exploited. § 1125(d)(1)(A). Accordingly, the Court finds that Plaintiff has not established a
28 likelihood of success on the merits of their claims, or even raised "serious questions going to the

8

1  merits," such that the Court need examine the other prongs of the preliminary injunction test. *See*
2  *Wild Rockies*, 632 F.3d at 1131-1132 (9th Cir. 2011).

### CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' motion for preliminary injunction and dissolves the temporary restraining order previously issued.[1]

**IT IS SO ORDERED.**

Dated:  September 9, 2025



JON S. TIGAR
United States District Judge

---

[1] Plaintiffs' motion discusses the application of the ACPA to the Isaacman Website but does not address the application of that statute to the web domains AIGeneratedBooks.com or TheLuckyTrigger.com.  Similarly, although the complaint makes claims for defamation, false light and business disparagement, in addition to cybersquatting, the motion does not address whether any of those claims forms a basis for injunctive relief.